# BEFORE THE
# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ELLWOOD CITY FORGE COMPANY, <br> ELLWOOD QUALITY STEELS COMPANY, <br> ELLWOOD NATIONAL STEEL <br> COMPANY, AND A. FINKL & SONS, <br><br>       *Plaintiffs*, <br><br>   V. <br><br> UNITED STATES <br>       *Defendant*. | Court No. 21-00077 |

## COMPLAINT

Plaintiffs Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons (collectively, "Plaintiffs") file this complaint to contest the final determination by the United States Department of Commerce ("Commerce") in the less than fair value investigation of Forged Steel Fluid End Blocks ("FEBs") from the Federal Republic of Germany ("Germany"). The final determination was initially published in the Federal Register on December 11, 2020 (85 Fed. Reg. 80,003) and an amended final determination and antidumping duty order was published on January 29, 2021 (86 Fed. Reg. 7,528). By and through their attorneys, Plaintiffs allege and state as follows:

## JURISDICTION

1. Plaintiffs bring this action pursuant to Sections 516A(a)(2)(A)(i)(II) and (B)(i) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (B)(i). Consequently, this Court has jurisdiction over this matter by reason of 28 U.S.C. § 1581(c),

1

which confers upon the U.S. Court of International Trade exclusive jurisdiction over civil actions commenced under Section 516A of the Act.

## STANDING

2. Plaintiffs are all U.S. producers of a domestic like product to FEBs from Germany, the subject merchandise in the underlying less than fair value investigation. Plaintiffs actively participated as co-petitioners in the less than fair value investigation that is the subject of this appeal. Plaintiffs also submitted facts and argument to Commerce during the investigation through the FEB Fair Trade Coalition ("Coalition"), whose members include Plaintiffs and the Forging Industry Association. Plaintiffs are "interested parties" within the meaning of Section 771(9)(C) of the Act, as amended, 19 U.S.C. § 1677(9)(C), and have standing to commence this action pursuant to Section 516A(d) of the Act, 19 U.S.C. § 1516a(d), and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

3. Commerce published notice of the initial final determination of the investigation in the Federal Register on December 11, 2020. *Forged Steel Fluid End Blocks from the Federal Republic of Germany: Final Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 80,018 (December 11, 2020) (hereinafter, "*Final Determination*"). Commerce subsequently published notice of the amended final determination and antidumping duty order in the Federal Register on January 29, 2021. *Forged Steel Fluid End Blocks from the Federal Republic of Germany and Italy: Amended Final Antidumping Duty Determination for the Federal Republic of Germany and Antidumping Duty Orders*, 86 Fed. Reg. 7,528 (January 29, 2021) (hereinafter, "*Amended Final Determination and AD Order*").

4. This action was commenced with the filing of the Summons on February 26, 2021, ECF No. 1, within 30 days after publication of the *Amended Final Determination and AD Order*. Accordingly, this action was timely commenced within the period specified in Section

516A(a)(2)(A)(i)(II) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(II), and Rule 3(a)(2) of the Rules of this Court.

5. This Complaint is filed contemporaneous with the filing of the Summons in this action and is therefore timely under the statutorily-prescribed time limits set forth in Section 516A(a)(2)(A)(i)(II) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(II), and Rules 3 of the Rules of this Court.

**STATEMENT OF FACTS**

6. Plaintiffs, along with the Forging Industry Association and the FEB Fair Trade Coalition, filed a petition on behalf of the domestic industry producing FEBs with Commerce and the U.S. International Trade Commission on December 19, 2019, alleging that imports of FEBs from Germany were being sold at less than fair value.

7. Commerce initiated a less than fair value investigation on FEBs from Germany on January 8, 2020. *Forged Steel Fluid End Blocks from the Federal Republic of Germany, India, and Italy: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 2,394 (January 15, 2020). On February 4, 2020 Commerce selected BGH Edelstahl Siegen GmbH ("BGH") and Schmiedewerke Groditz GmbH ("SWG"), the two respondents accounting for the largest volume of subject imports during the period of investigation ("POI"), as mandatory respondents in the investigation. Commerce subsequently issued questionnaires to both BGH and SWG.

8. In due course, BGH and SWG submitted questionnaire responses concerning their production activities in Germany, home market sales, U.S. sales, and its costs of production to produce the merchandise under consideration ("MUC").

9. Plantiffs identified various deficiencies in the mandatory respondents' initial questionnaire responses, including, *inter alia* the significant concern that BGH had failed to provide a valid cost reconciliation.

10. During the course of the investigation, plaintiffs also alleged that a particular market situation (PMS) existed in Germany during the period of investigation (POI) that prevented a proper comparison between between the price of products sold in Germany and the United States (*i.e.,* a "price-based PMS"). Plaintiffs further alleged that additional market distortions existed during the POI such that German producers' cost of producing subject merchandise was distorted and did not reflect the ordinary course of trade (*i.e.*, a "cost-based PMS"). Plaintiff supported these allegations with timely-filed factual information. Subsequently, BGH and SWG submitted responses rebutting the PMS allegations and the plaintiffs submitted further clarifying factual information.

11. Commerce issued additional rounds of supplemental questionnaires and the mandatory respondents filed questionnaire responses. Notably, SWG failed to respond to multiple questions in Commerce's supplemental Section D questionnaire by the deadline set by Commerce, and had not submitted a request for extension of the deadline.

12. Based on BGH's and SWG's various questionnaire responses, Plaintiffs filed comments in advance of Commerce's preliminary determination. With respect to BGH, Plaintiffs stressed the fact that, despite multiple opportunities, BGH had still failed to reconcile the total cost of manfaucturing in its financial statements to the total of the per-unit manufacturing costs in BGH's cost database submitted to the Department. Petitioners argued that without a valid cost reconciliation, it was impossible for the Department to determine

whether costs were appropriately allocated between MUC and non-MUC or otherwise accurately reported.

13. With respect to SWG, Plaintiffs noted that SWG's failure to provide a complete and timely response to Commerce's supplemental Section D questionnaire had left the record devoid of key factual information that was necessary to understand and ensure the accuracy of SWG's reported cost data and, thus, warranted the use of total adverse facts availalbe.

14. On July 23, 2020, Commerce published notice of its preliminary determination that imports of FEBs from Germany are being, or are likely to be, sold in the United States at less than fair value. *Forged Steel Fluid End Blocks the Federal Republic of Germany: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination*, *and Extension of Provisional Measures*, 85 Fed. Reg. 44,513 (July 23, 2020) (hereinafter, "*Preliminary Determination*"). With respect to BGH and SWG, Commerce calculated preliminary estimated weighted-average dumping margins of 0.00 and 15.47, respectively, with the rate assigned to SWG based on total adverse facts available. Commerce did not address any of Plaintiffs' comments concerning BGH's deficient cost reconciliation in the *Preliminary Determination*.

15. In addition to announcing the preliminary dumping margins, Commerce indicated that it intended to verify information provided by the mandatory respondents before making its final determination, as provided in Section 782(i)(1) of the Act, 19 U.S.C. § 1677m(i)(1). Specifically, Commerce stated: "As provided in section 782(i)(1) of the Act, Commerce intends to verify the information relied upon in making its final determination." 85 Fed. Reg. 44,515.

16. Commerce later issued a post-preliminary decision memorandum regarding plaintiff's PMS allegations. Commerce determined that while record evidence supported

plaintiff's allegations of a cost-based PMS affecting the respondents' electricity and ferrochrome costs, there was insufficient evidence to show that a price-based PMS existed during the POI.

17. On October 20, 2020, Commerce issued a questionnaire to BGH on October 20, 2020 "in lieu of performing an on-site verification." *See* Untitled Letter from Rebecca Trainor, Program Manager, to BGH, Case No. A-428-847, POI: 10/1/2018–9/30/2019, ACCESS Barcode 4042214-01 (Oct. 20, 2020) at 1. Commerce explained that "{t}he purpose of this questionnaire is to probe information that you have already submitted – not to obtain new information." *Id.* Commerce reasoned that its "questions are similar to those that the Department of Commerce … would normally ask during an on-site verification." *Id.* Accordingly, several of the key questions posed to BGH instructed it to demonstrate the reliability of its reported material and fabrication costs for merchandise under consideration (MUC) and non-MUC. *See, e.g.*, *id.* at Q.9.

18. BGH subsequently submitted a response to Commerce's "verification" questionnaire in which it again failed to reconcile the cost of production in its audited financial statements with the total costs of production reported in its cost database. BGH's "verification" questionnaire response also raised additional concerns, including substantive errors in its sales databases.

19. Parties filed case briefs on November 9, 2020. Petitioner's case brief addressed significant issues in BGH's verification responses including, *inter alia*, BGH's continued failure to reconcile its reported cost of production to its financial records and BGH's failure to substantiate its reporting of physical characteristics and control numbers ("CONNUMs") in its submitted sales database.

20. In due course, all parties filed rebuttal briefs addressing these issues and Commerce held a public hearing.

21. On December 11, 2020, Commerce published notice of its final determination that imports of FEBs from Germany are being, or are likely to be, sold in the United States at less than fair value during the POI. *Final Determination*, 85 Fed. Reg. 80,018. Commerce stated that it was unable to conduct on-site verification of the information relied upon in making its final determination, as provided in Section 782(i)(1) of the Act, 19 U.S.C. § 1677m(i)(1) and had instead requested additional information from the mandatory respondents through a questionnaire. In the Issues and Decision Memorandum ("IDM") accompanying the *Final Determination*, Commerce found that BGH had adequately reconciled its reported costs of production, notwithstanding a clear gap between estimated costs of producing MUC reflected in BGH's financial statement and BGH's reported unit costs of production. Commerce also found that discrepancies in BGH's reported physical characteristics and CONNUMs discovered in half of the sample sales traces reviewed through the verification questionnaire did not impugn the integrity of the remainder of BGH's sales reporting or warrant the use of adverse facts available. Commerce also continued to reject Plaintiff's allegation of a price-based PMS in Germany.

22. On January 28, 2021, Commerce published notice of its final amended determination and antidumping duty order. *Amended Final Determination and AD Order*, 86 Fed. Reg. 7,528. With respect to BGH and SWG, Commerce calculated final estimated weighted-average dumping margins of 4.79 and 78.36 percent, respectively.

# CLAIMS

## Count 1

23. Paragraphs 1 through 22 are incorporated herein by reference.

24. Pursuant to Section 782(i) of the Act, 19 U.S.C. § 1677m(i), Commerce "shall verify all information relied upon in making … a final determination in an investigation." Commerce stated in its *Preliminary Determination* that it would conduct verification.

25. By failing to conduct an on-site verification of BGH, Commerce acted unlawfully.

## Count 2

26. Paragraphs 1 through 25 are incorporated herein by reference.

27. In calculating costs of production, Section 773(f)(1)(A) of the Act, 19 U.S.C. 1677b(f)(1)(A) instructs that "{c}osts shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles {GAAP} of the exporting country…and reasonably reflect the costs associated with the production and sale of the merchandise."

28. For the purposes of this investigation, BGH devised a cost reporting methodology by which it allocated the costs in its audited financial statements to MUC and non-MUC based on BGH's "standard costs," which BGH does not use in the preparation of its audited financial statements and do not accurately reflect BGH's cost of production. As a result, BGH's reported costs of producing MUC are not GAAP-compliant and at best are an unreliable estimate that cannot be used to reconcile to BGH's reported product-specific costs.

29. Commerce's acceptance of BGH's cost reconciliation was not based on substantial evidence and was otherwise not in accordance with law.

**Count 3**

30. Paragraphs 1 through 29 are incorporated herein by reference.

31. In its verification questionnaire, Commerce asked BGH to provide complete sales traces for four sales transactions to validate the accuracy of its sales databases. BGH was unable to provide documentation to verify the reported product characteristics for half (*i.e.* two of four) of these sample sales.

32. These errors were significant, in part because the presence of errors in *half* of sample sales raised serious concerns about the validity of those sales that Commerce did not individually examine.

33. Commerce did not address this concern or examine a larger sub-set of BGH's reported sales. Instead, Commerce concluded, without explanation or evidentiary support and contrary to its well-established verficiation procedures and practice, that none of the reported errors were indicative of a systematic reporting issue.

34. Commerce's conclusion in this regard was unsupported by substantial evidence, and otherwise not in accordance with law.

**Count 4**

35. Paragraphs 1 through 34 are incorporated herein by reference.

36. Pursuant to 19 U.S.C. §§ 1677b(a)(1)(B) and 1677(15)(C), where a particular market situation exists such that the home market price is not "in the ordinary course of trade," Commerce may not use such sales to calculate normal value.

37. In its PMS allegation, the Coalition provided ample evidence that three factors in the German market for special steel products – cartel behavior, differing sales terms, and product

differences – existed during the POI and prevented a proper comparison between the price of products sold in Germany and the United States, and thus constituted a PMS under the statute.

38. Commerce nonetheless determined that home market sales were not distorted by a PMS. In so holding, Commerce deviated from its prior recent practice without explanation, maintaining that under the statute a "high threshold" was required to reject home market sales based upon a PMS.

39. Commerce's conclusion in this regard erred in both fact and law. In particular, Commerce's decision applied the incorrect legal standard, was inconsistent with prior Commerce practice, was unsupported by substantial evidence, and was otherwise not in accordance with law.

## **REQUEST FOR JUDGMENT AND RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Hold that the portions of Commerce's *Final Determination* that are complained of above are not supported by substantial evidence and are otherwise not in accordance with law;

b. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

c. Grant such further relief as this Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| February 26, 2021 | /s/ Myles S. Getlan |

Myles S. Getlan
Jack A. Levy
Thomas M. Beline
James E. Ransdell
Nicole Brunda

**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone: (202) 567-2313
Fax: (202) 567-2301

*Counsel for Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons*