Slip Op. No. 23-110

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ELLWOOD CITY FORGE CO., ELLWOOD NATIONAL STEEL CO., ELLWOOD QUALITY STEELS CO., and A. FINKL & SONS, *Plaintiffs/Defendant-Intervenors*, v. UNITED STATES, *Defendant*, and BGH EDELSTAHL SIEGEN GMBH, *Defendant-Intervenor/Plaintiff*. | Before: Stephen Alexander Vaden, Judge<br><br>Consol. Court No. 1:21-00077 |

# OPINION

[Granting Commerce's request for a voluntary remand and remanding for further explanation.]

Dated: July 24, 2023

*Myles S. Getlan*, Cassidy Levy Kent LLP, of Washington, DC, for Plaintiffs. With him on the brief were *Jack A. Levy*, *Thomas M. Beline*, *James E. Ransdell, IV*, and *Nicole Brunda*.

*Sarah E. Kramer*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Franklin E. White, Jr.*, Assistant Director, and *Alexander Fried*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Marc E. Montalbine*, deKieffer & Horgan, PLLC, of Washington, DC, for Defendant-Intervenor. With him on the brief were *Gregory S. Menegaz*, *Alexandra H. Salzman*, and *Merisa A. Horgan*.

**Vaden, Judge:** Before the Court is the U.S. Department of Commerce's (Commerce) Remand Redetermination in the antidumping investigation of forged steel fluid end blocks from Germany. *See Forged Steel Fluid End Blocks from the Federal Republic of Germany: Final Determination of Sales at Less Than Fair Value* (Final Determination), 85 Fed. Reg. 80,018 (Dec. 11, 2020). Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons (collectively "Ellwood City" and "Plaintiffs") argue that Commerce failed to explain why it refused to consider alternative pathways to make a particular market situation adjustment, meaning substantial evidence does not support its decision. Pls' Comments at 7–17, ECF No. 62. Meanwhile, Commerce has requested a voluntary remand to address alleged errors in its calculation of the antidumping margin. Def.'s Resp. at 4, ECF No. 65. Defendant-Intervenor BGH Edelstahl Siegen GmbH (BGH), a German producer of fluid end blocks and mandatory respondent in this investigation objects that administrative exhaustion bars Commerce's request for a voluntary remand. *See* Def.-Int.'s Resp. at 1–6, ECF No. 66. For the reasons set forth below, Commerce's request for a voluntary remand is **GRANTED**; and the case is also **REMANDED** to Commerce for further explanation of its refusal to address Plaintiffs' arguments regarding alternative pathways for a particular market situation adjustment.

# BACKGROUND

The Court presumes familiarity with the facts of this case as set out in its previous opinion and now recounts those facts relevant to the review of the Remand Redetermination. *See Ellwood City Forge Co. v. United States*, 600 F. Supp. 3d 1281 (CIT 2022). The investigation at issue began on December 18, 2019, when Plaintiffs filed a petition with Commerce alleging that German producers were selling fluid end blocks at less than fair market value in the United States. *Forged Steel Fluid End Blocks from the Federal Republic of Germany, India, and Italy: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 2,394 (Jan. 15, 2020). On December 8, 2020, Commerce issued its Final Issues and Decision Memorandum (IDM), explaining its decision to assign a dumping margin of 3.82% to BGH. J.A. at 83,987, ECF No. 42. Commerce published the Final Determination on December 11, 2020. Final Determination, 85 Fed. Reg. 80,018.

Ellwood City sued Commerce in February 2021, challenging the final determination regarding BGH. Compl. ¶¶ 23–39, ECF No. 6. BGH moved to intervene as Defendant-Intervenor on March 29, 2021. Consent Mot. Intervene, ECF No. 10. On May 6, 2021, the parties moved to consolidate with companion case 21-00079, in which BGH as Plaintiff challenges elements of the same determination. ECF No. 17. The Court granted that Motion on May 7, 2021, designating the present case as the lead consolidated case. Order Granting Mot. to Consolidate Cases, ECF No. 18. Ellwood City asked this Court to reverse Commerce's final determination on

Case 1:21-cv-00077-SAV   Document 78   Filed 07/24/23   Page 4 of 18

Consol. Court No. 1:21-00077                                                                    Page 4

the bases that (1) Commerce's failure to conduct on-site verification was contrary to law and (2) Commerce's overall determination is unsupported by substantial evidence and contrary to law because it relied on unreconciled cost data. Mot. for J. on Agency R. at 13–36, ECF No. 25. BGH similarly asked this Court to remand Commerce's final determination but on the bases that (1) Commerce erred in making particular market situation adjustments to BGH's reported costs and (2) Commerce erred in its application of differential pricing methodology. BGH's Mot. J. on Agency R. at 3–22, ECF No. 23. Commerce filed its response on December 17, 2021, and did not oppose a remand on BGH's particular market situation claim. Resp. Br. at 29, ECF No. 37. Ellwood City and BGH filed reply briefs on January 18, 2022. Ellwood City's Reply Br., ECF No. 40; BGH's Reply Br., ECF No. 38.

The Court held oral argument on April 25, 2022. ECF No. 52. The resulting opinion held that Elwood City had forfeited its verification claim and that Commerce did not err in its pricing methodology while also remanding the case back to Commerce to remove the particular market situation adjustment in accordance with the Federal Circuit's decision in *Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021). *See Ellwood City Forge*, 600 F. Supp. 3d at 1292. In *Hyundai Steel*, the Federal Circuit confirmed the consistent position of the Court of International Trade and held that applying a particular market situation adjustment to the calculation of the cost of production under 19 U.S.C. § 1677b(b) for sales below cost is illegal. 19 F.4th at 1352. This Court therefore "remand[ed] this issue to allow

Case 1:21-cv-00077-SAV   Document 78   Filed 07/24/23   Page 5 of 18

Consol. Court No. 1:21-00077                                                                           Page 5

Commerce to recalculate the dumping margin without impermissible cost-based particular market situation adjustments." *Ellwood City*, 600 F. Supp. 3d at 1303.

Commerce filed its Remand Redetermination with the Court on March 14, 2023. ECF No. 59. The agency removed the particular market situation adjustment to BGH's antidumping margin, and BGH received a new antidumping margin of zero. Remand Redetermination at 4, ECF No. 59. In response to comments proffered by Ellwood City arguing that Commerce improperly ignored alternative avenues to make a particular market situation adjustment to BGH's production costs, Commerce replied "that this remand redetermination is not the appropriate proceeding in which Commerce should address, for the first time, alternative possible interpretations of the CAFC's analysis in *Hyundai Steel*." *Id.* at 6. Ellwood City filed comments opposing the Remand Redetermination, arguing that Commerce's revision to the margin calculation contained an error that distorted BGH's dumping margin and that the agency unlawfully refused to consider alternative pathways to adjust BGH's production costs. Pls.' Comments at 2–17, ECF No. 62. Commerce filed a response requesting a voluntary remand to review the alleged calculation error and arguing that it was barred from considering the alternative pathways on remand. Def.'s Resp. at 4–8, ECF No. 65. BGH also replied to Plaintiffs' comments, opposing Commerce's request for a voluntary remand and arguing that administrative exhaustion barred the agency from considering Plaintiffs' proposed alternative pathways. Def.-Int.'s Resp. at 1–6, ECF No. 66. Seeking an opportunity to respond to these arguments,

Ellwood City filed a Motion for Leave to File a Reply with the proposed reply attached. *See* ECF No. 68. In that reply, Plaintiffs argued that exhaustion did not apply because the Federal Circuit's *Hyundai Steel* decision was not issued until after the initiation of the present litigation. *See* Pls.' Reply at 2–5. The Court granted the Motion. ECF No. 75. The issues are fully briefed, and the case is now ripe for adjudication.

## JURISDICTION AND STANDARD OF REVIEW

This Court has exclusive jurisdiction over Ellwood City and BGH's challenge to Commerce's Remand Redetermination under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting final affirmative determinations, including any negative part of such determinations, in an antidumping order. The Court will sustain Commerce's remand results unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *New Am. Keg v. United States*, No. 20-00008, 2021 WL 1206153, at \*6 (CIT Mar. 23, 2021). Additionally, "[t]he results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (CIT 2014) (quoting *Nakornthai Mill Pub. Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (CIT 2008)).

## DISCUSSION

### I.  Summary

The Remand Redetermination presents two distinct issues: (1) Commerce's request for a voluntary remand to reconsider its calculation of the variable cost difference and (2) Commerce's refusal to address Plaintiffs' proposed alternatives to the withdrawn particular market situation adjustment. *See* Pls.' Comments at 2–17, ECF No. 62; Def.'s Resp. at 4–8, ECF No. 65. Both are easily dispatched. First, Commerce's remand request raises "substantial and legitimate" concerns about the accuracy of the antidumping margin so that remand is proper. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). BGH's objection that Ellwood City failed to administratively exhaust the calculation issue misconstrues the purposes of exhaustion. *See* Def.-Int.'s Resp. at 2, ECF No. 66. Exhaustion serves to ensure that an agency has an opportunity to address an objection or issue at the time of its decision instead of when it is "haled into federal court." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). This concern is obviated when *the agency* requests a remand.

Second, when Commerce refused to address Plaintiffs' proposed alternatives in its Remand Redetermination, the agency failed to articulate a clear rationale for its decision. Its explanation could be interpreted in at least three different ways: (1) the remand order prohibited the agency from considering the alternatives; (2) administrative exhaustion bars it from considering them; or (3) it would be improper

to consider Ellwood City's alternatives because it would require the agency to reopen the record. *See* Remand Redetermination at 6, ECF No. 59 ("[W]e determine that this remand redetermination is not the appropriate proceeding in which Commerce should address, for the first time, alternative possible interpretations[.]"). The first rationale is erroneous because the remand order was silent on this point. *See Ellwood City*, 600 F. Supp. 3d at 1303. The second and third rationales may have merit. However, the Court cannot sustain agency action when the path of the agency's reasoning is not discernible. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). Accordingly, Commerce's request for a voluntary remand is **GRANTED**. The case is also **REMANDED** for Commerce to further explain why it refused to address Plaintiffs' proposed alternatives.

## II. Commerce's Request for a Voluntary Remand

Plaintiffs argue that Commerce's calculation of BGH's dumping margin contained a significant error. Pl.'s Comments at 2-4, ECF No. 62. They allege that Commerce erred in its calculation of the variable cost difference, which "is a filtering mechanism to determine whether a given . . . product sold in the U.S. market can reasonably be compared with the closest, non-identical . . . product sold in the home market." *Id.* at 2. This filtering mechanism is vital to establishing an accurate dumping margin in cases where there is no identical product sold in both the U.S. market and the home market. In such cases, the equation ensures an apples-to-apples comparison by filtering out products whose costs are too dissimilar for an

accurate price comparison. Such products are filtered out when the difference in the "variable costs of merchandise sold in home and U.S. markets . . . exceeds 20% of the average total cost of the U.S. model[.]" *Id.* Plaintiffs allege that, when Commerce removed the particular market situation adjustment, it failed to remove the adjustment from the denominator of the variable cost difference equation. *Id.* at 4. This mistake distorted the calculation and consequently the dumping margin by allowing non apples-to-apples comparisons between products in the home and U.S. markets. *See id.* Although Commerce does not concede that it made an error in its calculations, it has requested a voluntary remand to "reconsider its calculation in light of plaintiffs' argument that Commerce made errors in the margin program." Def.'s Resp. at 5, ECF No. 65. BGH opposes this request, alleging that it is barred by the doctrine of administrative exhaustion. Def.-Int.'s Resp. at 2, ECF No. 66 ("Despite this obvious error in Commerce's calculations, Plaintiffs chose not to make any comments on Commerce's calculations."). Because Commerce's concerns are "substantial and legitimate," it is appropriate for the Court to grant a remand. *SKF*, 254 F.3d at 1029.

Under Federal Circuit precedent, an agency "may request a remand (without confessing error) in order to reconsider its previous position." *Id.* In such circumstances, "if the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id.*; *see also Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly grant such motions [for voluntary remand], preferring to

allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete."). The Court has discretion to deny the request "if the agency's request is frivolous or in bad faith." *SKF*, 254 F.3d at 1029.

An agency's concerns are substantial and legitimate when "(1) Commerce supports its request with a compelling justification, (2) the need for finality does not outweigh the justification, and (3) the scope of the request is appropriate." *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 37 CIT 1123, 1127 (2013) (citation omitted). Commerce's concerns here are substantial and legitimate because "an overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible[.]" *Parkdale Int'l v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007). The alleged error, which BGH does not contest, would affect the accuracy of the dumping margin. *See* Def.-Int.'s Resp. at 2, ECF No. 66 (calling the error "obvious"). As such, "[i]n the context of a routine appeal of a final determination, the need to accurately calculate margins is not outweighed by the interest in finality." *Baroque Timber*, 37 CIT at 1127 (citation omitted). Commerce's remand request in this case is appropriate and limited to the "narrow issue" of the alleged errors in the variable cost difference calculation. Def.'s Resp. at 5, ECF No. 65.

BGH objects that a remand is improper because of Ellwood City's failure to exhaust its administrative remedies; namely, that it failed to raise the alleged error

Case 1:21-cv-00077-SAV   Document 78   Filed 07/24/23   Page 11 of 18

Consol. Court No. 1:21-00077                                                                                                   Page 11

during the remand proceedings. *See* Def.-Int.'s Resp. at 2, ECF No. 66. This objection turns the purpose of the exhaustion doctrine on its head. "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. "[D]eference to Congress' delegation of authority" means that "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *Id*. The doctrine ensures "that an agency [has] an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id*. In this case, *the agency* is requesting a remand to address the alleged errors, obviating any concern that failure to exhaust has "deprived the agency of the opportunity to consider these arguments in the first instance." *Carpenter Tech. Corp. v. United States*, 30 CIT 1595, 1598 (2006); *see also Baroque Timber*, 37 CIT at 1129 (holding that exhaustion does not bar Commerce's request for a voluntary remand). Instead, a voluntary remand gives the agency "an opportunity to correct its own mistakes[.]" *McCarthy*, 503 U.S. at 145. Because Commerce has requested a voluntary remand to address a substantial and legitimate concern, administrative exhaustion does not apply. The Court **REMANDS** the case back to Commerce to reconsider its calculation.

### III.   Particular Market Situation Adjustment

Following the Court's remand, Commerce removed the particular market situation adjustment that it had previously made to BGH's dumping margin.

Case 1:21-cv-00077-SAV  Document 78  Filed 07/24/23  Page 12 of 18

Consol. Court No. 1:21-00077　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 12

Remand Redetermination at 4, ECF No. 59. The agency also declined to address Ellwood City's proposed alternative methods of adjusting BGH's costs because the remand was not "the appropriate proceeding" to address the issue "for the first time[.]" *Id.* at 6. Plaintiffs do not challenge Commerce's removal of the initial adjustment but instead challenge Commerce's refusal to address their proposed "alternative statutory pathways whereby Commerce could make corrective adjustments during remand." Pls.' Comments at 7, ECF No. 62. Ellwood City argues that Commerce should have accounted for distortions in BGH's cost data in calculating BGH's antidumping margin. *Id.* at 9 ("Moreover, insofar as the Court declined to disturb Commerce's underlying PMS distortion finding . . . it was illogical for Commerce to assume the Court expected Commerce to abdicate its responsibility to administer the antidumping laws and do no more than calculate a price-to-price margin using distorted cost data."). In its brief before the Court, the Government responds that, because the original particular market situation adjustment was not based on the new statutory pathways suggested by Plaintiffs, it is barred from considering them now. Def.'s Resp. at 5, ECF No. 65 ("At no point leading up to Commerce's determination were these 'alternatives' raised and thus, at no point did Commerce discuss them."). BGH agrees that Commerce was not required to address these alternatives because "Plaintiffs failed to raise any of their 'alternative statutory routes' during the original investigation." Def.-Int.'s Resp. at 4, ECF No. 66 (quoting

Def.'s Resp. at 6, ECF No. 65). What Commerce actually wrote in its Remand Redetermination was not nearly so exact.

The Court can only affirm Commerce's decisions "on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). If "the agency's path may [not] be reasonably discerned," then the Court cannot uphold an agency determination. *Bowman Transp.*, 419 U.S. at 286. That is the case here. Commerce's explanation of why it refused to address the Plaintiffs' proposed alternatives consisted of a single paragraph:

> The Court granted a remand, which Commerce did not oppose, specifically to "recalculate the dumping margin without impermissible cost-based particular market situation adjustments for BGH's electricity and ferrochrome inputs." Importantly, the Court remanded this case "on narrow grounds" so that Commerce may reconsider its finding of a PMS. While the Coalition contends that Commerce may rely on other avenues to support making a cost-based PMS adjustment in accordance with the CAFC's decision in *Hyundai Steel*, in line with Commerce's remand request and the Court's *Remand Order*, we determine that this remand redetermination is not the appropriate proceeding in which Commerce should address, for the first time, alternative possible interpretations of the CAFC's analysis in *Hyundai Steel*. Accordingly, we have declined to consider the Coalition's arguments in the context of these final results of redetermination.

Remand Redetermination at 6, ECF No. 59. This paragraph is amenable to at least three different interpretations: (1) Commerce believed that the remand order prohibited it from addressing Plaintiffs' arguments; (2) Commerce believed that

Plaintiffs had forfeited their arguments because they never raised them in the original investigation; or (3) Commerce believed that it would be inappropriate to consider the arguments because it would require the agency to reopen the record. Consequently, the path of the agency's reasoning "may [not] be reasonably discerned." *Bowman Transp.*, 419 U.S. at 286.

The first rationale is erroneous: The remand order did not bar Commerce from considering Plaintiffs' arguments. *See Ellwood City*, 600 F. Supp. 3d at 1303 (nowhere discussing alternative pathways). The second interpretation — proffered by Commerce in its brief to the Court — may have merit, but Commerce failed to articulate it in its actual decision. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50 (limiting courts to review of the "basis articulated by the agency itself"). The Government and BGH contend in their briefs that Ellwood City never raised these alternative statutory pathways to make a particular market situation adjustment before the agency in the original investigation. *See* Def.'s Resp. at 5, ECF No. 65; Def.-Int.'s Resp. at 4, ECF No. 66. Ellwood City does not dispute this. Instead, it objects that it could not have known to brief these alternatives because the Federal Circuit had not yet issued its decision in *Hyundai Steel*. *See* Pls.' Reply at 3, ECF No. 68 ("Plaintiffs had no opportunity to argue the implications of that decision administratively, and Commerce cannot refuse to consider arguments on remand that Plaintiffs had no cause to raise before this litigation.").

This is a creative argument given that Ellwood City *was* on notice that its litigation position before the agency had been rejected by this Court. *See* Petitioners' Rebuttal Brief at 34, Barcode: 4055223-01 A-428-847 (stating that "the CIT's apparently restrictive interpretation does not govern this [administrative] proceeding"). Before the Federal Circuit's decision in *Hyundai Steel* and before Commerce's final determination in this matter, the Court of International Trade had rejected Plaintiffs' legal theory at least seven times. *See, e.g.*, *Hyundai Steel Co. v. United States*, 483 F. Supp. 3d 1273, 1279 (2020); *Saha Thai Steel Pipe Pub. Co. v. United States*, 422 F. Supp. 3d 1363, 1368–70 (2019); *Husteel Co. v. United States*, 426 F. Supp. 3d 1376, 1383–89 (2020); *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States*, 426 F. Supp. 3d 1395, 1411–12 (2020); *Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317, 1337–41 (2020); *Husteel Co. 6 v. United States*, 476 F. Supp. 3d 1363, 1370–73 (2020); *Saha Thai Steel Pipe Pub. Co. v. United States*, 476 F. Supp. 3d 1378, 1382–86 (2020). One respondent even flagged the legal infirmity of Plaintiffs' position in comments submitted to Commerce in the underlying investigation. *See* IDM at 15–16, J.A. at 84,001–02, ECF No. 44. No federal judge ever accepted Ellwood City's proffered argument justifying its request for a particular market situation adjustment. Ellwood City nonetheless proceeded before Commerce without making any alternative arguments. *Cf.* Petitioners' Rebuttal Brief at 33–34, Barcode: 4055223-01 A-428-847 (acknowledging that "the issue of whether Commerce can apply a PMS adjustment to cost in making sales below cost calculations remains

live and is currently pending before the U.S. Court of Appeals for the Federal Circuit").

None of the above is mentioned by Commerce in its Remand Redetermination. Therefore, the Court may not presume Commerce declined to addresses Plaintiffs' newly proffered pathways because Ellwood City made a strategic litigation decision to base its case on a legal argument no federal court ever accepted. Nor is there any information regarding the third possible interpretation of its paragraph explanation. Commerce is silent on whether it believes it has sufficient information on the record before it to make an alternative calculation. Commerce thus has not adequately explained its rationale for rejecting Plaintiffs' request that it consider alternative pathways to a particular market situation adjustment. Because the Court may not make the decision for Commerce, it will be the agency's task on remand to consider the arguments made and state a fulsome rationale for either considering or not considering Plaintiffs' alternative pathways. *See Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1312 (CIT 2022) ("The Court reviews answers Commerce actually gave for substantial evidentiary support. It does not draft answers Commerce never gave from the available record information before the Department.") (internal citation omitted).

## CONCLUSION

This case must return to the agency for further consideration. Commerce's request for a voluntary remand to examine the alleged error in its variable cost

difference calculation is **GRANTED**. The agency must also provide an adequate explanation for its decision on Plaintiffs' request that it employ alternative pathways to a particular market situation adjustment. Consequently, the case is **REMANDED** to Commerce.

On consideration of all papers and proceedings held in relation to this matter, and on due deliberation, it is hereby:

**ORDERED** that Commerce's determination is remanded for reconsideration of its variable cost difference calculation; and

**ORDERED** that Commerce provide an adequate explanation for its decision on Ellwood City's request to consider alternative pathways to a particular market situation adjustment; and it is further

**ORDERED** that Commerce shall file its Second Remand Redetermination with the Court within 120 days of today's date; and it is further

**ORDERED** that Defendant shall supplement the administrative record with all documents considered by Commerce in reaching its decision in the Second Remand Redetermination; and it is further

**ORDERED** that Plaintiffs shall have 30 days from the filing of the Second Remand Redetermination to submit comments to the Court; and

**ORDERED** that Defendant shall have 15 days from the date of Plaintiffs' filing of comments to submit a response; and

**ORDERED** that Defendant-Intervenor shall have 15 days from the date of Defendant's filing of comments to submit a response.

**SO ORDERED.**

/s/ Stephen Alexander Vaden<br>Stephen Alexander Vaden, Judge

Dated: July 24, 2023
       New York, New York