IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

|  |  |  |
|---|---|---|
| ELLWOOD CITY FORGE COMPANY, ELLWOOD QUALITY STEELS COMPANY, ELLWOOD NATIONAL STEEL COMPANY, and A. FINKL & SONS, | ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Consol. Court No. 21-00077 |
| UNITED STATES, | ) ) |  |
| Defendant, | ) ) |  |
| and | ) ) |  |
| BGH EDELSTAHL SIEGEN GMBH, | ) ) |  |
| Defendant-Intervenor. | ) ) |  |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments brief (ECF No. 82) filed by plaintiffs Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons (collectively, Ellwood City or plaintiffs) concerning the Department of Commerce's (Commerce) final results of the second remand redetermination filed in accordance with this Court's decision and remand order in *Ellwood City Forge Co. v. United States*, Consol. Ct. No. 21-00077, Slip Op. 22-123 2023 WL 4703309 (Ct. Int'l Trade July 24, 2023) (*Ellwood II*). *See* Final Results of Redetermination

Pursuant to Court Remand, Nov. 21, 2023, ECF No. 80 (Second Remand Redetermination).[1] The Court should sustain Commerce's second remand redetermination because it complies with the remand opinion, and is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

The administrative determination under review is the less-than-fair value investigation covering forged steel fluid end blocks from Germany. *See Forged Steel Fluid End Blocks from the Federal Republic of Germany*, 85 Fed. Reg. 80,018 (Dep't of Commerce Dec. 11, 2020) (final LTFV determ.), and the accompanying Issues and Decision Memorandum (IDM).

In an earlier remand opinion and order, the Court held that Ellwood City had forfeited its verification claim and that Commerce did not err in its pricing methodology, but also remanded to Commerce to remove the particular market situation adjustment in accordance with the Federal Circuit's decision in *Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021). *See Ellwood City Forge Co. v. United States*, 600 F. Supp. 3d 1281, 1289 (Ct. Int'l Trade 2022) (*Ellwood I*).

In its July 24, 2023 opinion and order (ECF No. 78), entered after Commerce had filed the first remand redetermination (ECF No. 59) with the Court, the Court granted the Government's request for a voluntary remand to address alleged errors in the calculation of the dumping margin for BGH Edelstahl Siegen GmbH (BGH) and for Commerce to either further explain its decision not to consider plaintiffs' arguments regarding alternative pathways to a

---

[1] "P.R.R. _" refers to documents in the public administrative records for this remand proceeding. Because the Court instructed Commerce to either consider or explain why it was inappropriate to consider plaintiffs' arguments in the first remand proceeding, Commerce moved Ellwood City's comments on its first remand redetermination to this administrative record. P.R.R. 1.

particular market situation adjustment or to address those arguments. *See Ellwood II*, 2023 WL 4703309, at *3-6.

On remand, Commerce found and corrected an inadvertent distortion in the COSTDIFF calculation which had depressed BGH's margin. Draft Remand Redetermination, P.R.R. 2. BGH argued that Commerce should not correct the dumping margin because Ellwood City did not exhaust their administrative remedies. BGH Cmts. on Draft Remand Redetermination, P.R.R. 4. But as Commerce explained in the final remand redetermination, Ellwood City did not have an opportunity to exhaust its administrative remedies because Commerce changed the calculations only after all comments were submitted. Second Remand Redetermination at 12-13. In addition, Commerce noted that the Court had already rejected BGH's argument, explaining it "turns the purpose of the exhaustion doctrine on its head" and that "{b}ecause Commerce has requested a voluntary remand to address a substantial and legitimate concern, administrative exhaustion does not apply." *Ellwood II*, 2023 WL 4703309, at *4. Thus, Commerce corrected the error in its entirety. Second Remand Redetermination at 13.

With respect to the issues regarding particular market situation, Commerce explained in the draft remand why it was inappropriate to address Ellwood City's alternative statutory routes in the context of a remand redetermination. Draft Remand Redetermination at 2. Ellwood City argued, however, that Commerce's acceptance of its proposed "alternative" pathway in 19 U.S.C. § 1677b(f) "would not be a '{particular market situation} adjustment'" because its proposed pathway would "correct a distortion that rendered BGH's costs not 'reasonably reflect{ive}' of production costs within the meaning of Section 773(f)(1)(A), rather than being undertaken because that distortion is labeled a '{particular market situation}' within the meaning

3

of Section 773(e)." Ellwood City Cmts. on Second Draft Remand Redetermination, P.R.R. 5 at 19.[2]

Nonetheless, Commerce addressed Ellwood City's particular market situation arguments in the final remand redetermination and found these routes are unlawful. Second Remand Redetermination at 11-12. Commerce continued to find the existence of a particular market situation for electricity and ferrochrome in Germany but declined to adjust BGH's cost of production. *Id.*

## ARGUMENT

**I.     Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

**II.    Commerce's Determination that Plaintiffs' Alternative Statutory Routes To Reaching A Particular Market Situation Adjustment For Cost Of Production Are Unlawful Is Supported By Substantial Evidence And In Accordance With Law**

By way of background, Ellwood City seeks a statutory pathway that would allow Commerce to adjust for cost of production when finding a particular market situation. *See* Ellwood City Cmts. at 24-25. Ellwood City agrees that Pathway #1 (relying on 19 U.S.C.

---

[2] Ellwood City changed its specific arguments after Commerce issued its second draft remand redetermination. *Compare* Ellwood City Cmts. on First Draft Remand Redetermination, P.R.R. 1 at 7 (arguing originally that "Commerce include a {particular market situation} adjustment, essentially reforming BGH's reported costs to account for {particular market situation} distortion and thereby "reasonably reflect" BGH's production costs."), *with* Ellwood City Cmts. on Second Draft Remand Redetermination, P.R.R. 4 at (now arguing that *Husteel Co. v. United States*, 426 F. Supp. 3d 1376, 1383 (Ct. Int'l Trade 2020), does not address whether Commerce can rely on a more general "existence or absence of distortion" to adjust a respondent's cost of production through § 1677b(f)).

4

§ 1677b(e)), was directly foreclosed by the Federal Circuit's decision in *Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021), and Pathway #2 (relying on 19 U.S.C. § 1677b(a)(1)(C)(iii)), was also recently held unlawful by the Federal Circuit in *Saha Thai Steel Pipe Public Company Limited v. United States*, 87 F.4th 1328, 1330-31 (Fed. Cir. 2023) (holding that Commerce "cannot use {particular market situation} adjustments for cost of production calculations under the statutory framework" because "Congress did not intend to authorize the agency to incorporate {particular market situation} adjustments for cost of production calculations."). Although *Saha Thai* was issued after Commerce filed the remand redetermination with this Court, Commerce nonetheless correctly determined that Pathway #2 was foreclosed in its remand redetermination. Second Remand Redetermination at 8-11. The only matter left for this Court to decide is whether Ellwood City's Pathway #3, Commerce's use of its discretion under 19 U.S.C. § 1677b(f)(1)(A) to reject a respondent's reported costs in performing the sales-below-cost test wherever those costs do not "reasonably reflect" the costs of production, Ellwood City Cmts. at 23-25, is a viable route to using a particular market situation finding to adjust for cost of production. The Court should find that Commerce correctly rejected this third pathway as being contrary to law. *See* Second Remand Redetermination at 11–12.

As Commerce explained in the second remand redetermination, and below, Ellwood City's arguments are contrary to law and rely on a misunderstanding of a particular market situation finding. *See id.* at 10-12.

### A. The Federal Circuit's Precedent Directly Forecloses Using Commerce's Particular Market Situation Finding To Adjust For Cost Of Production

Both *Husteel* and *Saha Thai* address whether Commerce can use particular market situation adjustments for cost of production. As Ellwood City expressly recognizes, *Husteel* directly foreclosed their 19 U.S.C. § 1677b(f) pathway to a particular market situation adjusting

5

for cost of production.  426 F. Supp. 3d at 1383; Ellwood City Cmts. at 15.  While recognizing that the Federal Circuit "acknowledged" § 1677b(f), Ellwood City claims that the § 1677b(f) pathway "was not addressed by the Federal Circuit" in *Saha Thai* and that therefore, Commerce may rely on § 1677b(f)(1)(A) to "address distortion in a respondent's reported costs."  Ellwood City Cmts. at 15.  This is an incorrect interpretation because the holding in *Saha Thai* is broader than Ellwood City's reading:  to wit, "the statute simply *does not authorize* {particular market situation} adjustments to cost of production calculations."  *Saha Thai*, 87 F.4th at 1331 (emphasis added).  In other words, *Saha Thai* directly supports Commerce's determination that it *cannot* use its particular market situation finding to adjust for cost of production by relying on § 1677b(f)(1)(A).  Second Remand Redetermination at 11-12.

> **B.      While Commerce Has The Authority Under 19 U.S.C. § 1677b(f) To Disregard A Respondent's Books And Records, The Requisite Conditions Are Not Met Through A Cost-Based Particular Market Situation Finding**

Although Commerce has the authority under 19 U.S.C. § 1677b(f) to disregard a respondent's books and records under certain conditions, Commerce declined to do so in this investigation.  *See generally* Remand Redetermination at 11-12.  The text of 19 U.S.C. § 1677b(f)(1)(A) provides, in part,

> {c}osts shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country (or the producing country, where appropriate) and reasonably reflect the costs associated with the production and sale of the merchandise.

Ellwood City argues that Commerce continues to find a cost-based particular market situation for electricity and ferrochrome and, therefore, BGH's books and records do not reasonably reflect the costs associated with the production and sale of the merchandise.  Ellwood City Cmts. at 7-8.  They then argue the preconditions in 19 U.S.C. § 1677b(f) are not met, and

6

Commerce must disregard BGH's reported costs because of a particular market situation and use constructed value to calculate its cost of production. *Id.* In other words, Ellwood City asks Commerce to use its particular market situation finding to adjust for cost of production by disregarding BGH's books and records. This would be unlawful.

First, Commerce determined that a cost-based particular market situation finding does not warrant disregarding a respondent's books and records. Remand Redetermination at 11-12. As Commerce explained, "{a} cost-based {particular market situation} finding is not a finding that reported costs are not a reasonable reflection of the costs respondent actually incurred. Rather, a {particular market situation} finding is based on an analysis that prevailing prices (of inputs) in a given market are different from what they would have been absent certain distortions." *Id.* at 12.

Ellwood City claims that this interpretation – that 19 U.S.C. § 1677b(f)(1)(A) concerns whether the respondent's books and records reasonably reflect the costs incurred by the respondent and not broader, market-based distortions – is "absurdly narrow" and contravenes congressional intent. Ellwood City Cmts. at 8. But the plain text of the statute only allows Commerce to disregard a respondent's books and records if (1) they are not kept in accordance with the generally accepted accounting principles of the exporting country, and (2) if they do not reasonably reflect the costs associated with the production and sale of the merchandise. 19 U.S.C. § 1677b(f)(1)(A). A particular market situation finding is a finding *not* based on a respondent's books and records, but on market conditions. Second Remand Redetermination at 12. Thus, Commerce reasoned there is no legal basis to use a market-based particular market situation finding to disregard a respondent's books and records on an individual respondent basis. *Id.* at 11-12.

7

Undeterred, Ellwood City argues that the Court should look to the Federal Circuit's decision in *Dillinger France S.A. v. United* States, 981 F.3d 1318, 1323 (Fed. Cir. 2020), Ellwood City Cmts. at 13, 18, which held that "Congress expect{ed} {Commerce}, in determining whether a producer's or exporter's records reasonably reflect the costs associated with the production and sale of the product in question, to examine the recorded production costs with a view to determining as closely as possible the *costs that most accurately reflect the resources* actually used in the production of the merchandise in question." 981 F.3d at 1323 (citing S. Rep. No. 103-412, at 75) (emphasis added).  But *Dillinger France* is inapposite because it did not involve Commerce finding the existence of a particular market situation; rather the Court held that "Commerce improperly allocated costs between Dillinger's non-prime and prime products based on Dillinger's books and records, which allocate cost based on likely selling price rather than actual cost." *Id.* at 1321.  Here, this is not a cost allocation case, and as Commerce determined, there is no statutory basis to disregard BGH's books and records *based on a particular market situation* as the books and records accurately reflected BGH's incurred costs (or "resources actually used in the production of the merchandise in question.").[3]  Second Remand Redetermination at 11-12.

Second, even if one were to re-label or re-fashion Commerce's particular market situation finding as a more generalized distortion as Ellwood City argues the Court should do, Ellwood City Cmts. at 10, 13 n.7, there is still no evidentiary basis to disregard BGH's costs and neither

---

[3] Commerce noted that BGH does not purchase ferrochrome from the Kazakh company that is distorting market costs.  Second Remand Redetermination at 12.  While Commerce continues to rely on its decision that that the Kazakh company's sales distort ferrochrome costs in the German market, resulting in a particular market situation, there is no reason to believe that the books and records of BGH would not reasonably reflect the costs incurred by BGH, as the distortion is pervasive and market-based and not reflected in a respondent's books and records.  *Id.*

did Ellwood City contest Commerce's determination that BGH's books and records accurately reflect its costs in its complaint in this case.  *See generally* Compl., ECF No. 6.  Indeed, Commerce has already concluded that BGH's books and records accurately reflect its costs, as Ellwood City raised a different 19 U.S.C. § 1677b(f) argument in the underlying investigation.  Second Remand Redetermination at 11 n.37 (citing IDM at 38, in that BGH's "reported costs 'reasonably reflect' the costs associated with the production and sale of the merchandise as required by the statute.").

Ellwood City argues that this is a misdirection, claiming there is "absolutely no inconsistency in Commerce finding that BGH's cost figures reconciled overall, while also finding that BGH's electricity and ferrochrome cost figures do not reasonably reflect its production costs, particularly where the distortion manifests itself as BGH paying below-market prices for those inputs."  Ellwood City Cmts. at 10-11.  This is incorrect.  To disregard BGH's books and records under 19 U.S.C. § 1677b(f), Commerce must find, based on substantial record evidence, that BGH's books and records do not "reasonably reflect the costs associated with the production and sale of the merchandise."  Commerce has found the opposite:  that BGH's books and records *do* accurately reflect its incurred costs, or, in other words, "the resources actually used in the production of the merchandise in question."  *Dillinger France*, 981 F. 3d at 1323; Second Remand Redetermination at 11-12.

Moreover, over the course of two remands, Ellwood City still has not pointed to an actual problem in BGH's books and records.  Instead, in the first remand, Ellwood City reiterated Commerce's finding that a cost-based particular market situation exists and therefore it must carry over to BGH's books and records.  *See* Ellwood City Cmts. on First Draft Remand Redetermination, P.R.R. 1.  In the second remand, Ellwood City urged Commerce to find *some*

9

distortion (regardless of whether Commerce labels such distortion a particular market situation) and find it to have affected BGH's books and records such that they do not reflect actual costs. *See* Ellwood City Cmts. on Second Draft Remand Redetermination, P.R.R. 5. As Commerce explained in the second remand redetermination, "{a}lthough it is possible in theory that distorted costs could contribute to distorted sales prices, {Ellwood City} has provided no support for its allegation that the cost-based {particular market situation} in the exporting country does not permit a proper comparison with export price (EP) or constructed export price (CEP)." Second Remand Redetermination at 10. And "{r}ather than provide evidence that distorted costs in Germany resulted in distorted prices, {Ellwood City} simply alleged that 'BGH is assumed to spread its costs savings strategically in markets where BGH stands to benefit the most in terms of gaining market share and customs.'" *Id.* But "{g}uesswork is no substitute for substantial evidence in justifying decisions," *Tehnoimportexport, UCF. America Inc. v. United States*, 783 F. Supp. 1401, 1406 (Ct. Int'l Trade 1992), and no evidence exists to suggest that BGH's books and records do not accurately reflect its costs, regardless of whether Commerce labels its particular market situation finding as a particular market situation or a more general distortion. *See* Second Remand Redetermination at 10; IDM at 38-41.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's second remand redetermination, and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

|  |  |
|---|---|
|  | /s/ Franklin E. White, Jr.<br>FRANKLIN E. WHITE, JR.<br>Assistant Director |
| OF COUNSEL:<br>ALEXANDER FRIED<br>Attorney<br>Office of the Chief Counsel<br>for Trade Enforcement & Compliance<br>U.S. Department of Commerce<br>Washington, D.C. 20230 | */s/* Kara M. Westercamp<br>KARA M. WESTERCAMP<br>Trial Attorney<br>U.S. Department of Justice<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 305-7571<br>E-mail:  Kara.M.Westercamp@usdoj.gov |
| January 5, 2024 | *Attorneys for Defendant United States* |

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| ELLWOOD CITY FORGE COMPANY, ELLWOOD QUALITY STEELS COMPANY, ELLWOOD NATIONAL STEEL COMPANY, and A. FINKL & SONS, <br><br>    Plaintiffs, <br><br> v. <br><br>UNITED STATES, <br><br>    Defendant, <br><br>    and <br><br>BGH EDELSTAHL SIEGEN GMBH, <br><br>    Defendant-Intervenor. | Consol. Court No. 21-00077 |

## **ORDER**

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the second remand results are sustained in their entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated:_____, 2024           _____

New York, NY                STEPHEN A. VADEN, JUDGE

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,807 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Kara M. Westercamp<br>
KARA M. WESTERCAMP<br>
Trial Attorney<br>
Department of Justice<br>
Civil Division