

CHAMBERS OF
TIMOTHY M. REIF
JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, N.Y. 10278-0001

January 13, 2026

**VIA CM/ECF**

    Re:   *Ellwood Forge Co. et al. v. United States*
              Consol. Court No. 21-00077

Dear Counsel:

    Oral argument in this action is scheduled for January 22, 2026, at 10:00 am ET in Courtroom No. 1 of the U.S. Court of International Trade, One Federal Plaza, New York, New York, with the option to appear via video conference. In preparation for oral argument, the court would like counsel to be prepared to address the issues noted below. As the court continues to review the documents in this case or as the argument progresses, the court may decide to ask additional questions.

    Please be advised that the court prefers to conduct oral argument interactively, allowing each party to respond to the question presented before moving on to the next question. To facilitate this interaction, counsel are welcome to remain seated for the duration of the hearing. Any counsel who intends to participate virtually via video conference is instructed to inform the case manager, Jason Chien, and is further instructed to test their Internet connection, audio performance and video performance prior to joining the oral argument. If counsel experience any difficulties during the test, the court instructs counsel to connect to the oral argument through the provided telephone dial-in. In this case, counsel may also choose to connect with their computer camera but must speak through the telephone. Finally, anyone who joins via video conference is instructed to turn their camera on and to remain visible to the court throughout the duration of the oral argument.

    Please be advised that the use of personal devices with screens is prohibited in the courtroom during the duration of the oral argument.

    For the oral argument, the court would like parties to focus primarily on the following issues:

I. **Commerce's use of home-market prices and constructed value in calculating normal value**

Commerce stated that "[i]n this investigation, in certain instances, we calculated normal value based on constructed value." First Remand Redetermination at 4, ECF No. 80. Plaintiff asserted that "[i]n calculating the antidumping margin, the normal values for some of BGH Edelstahl Siegen GmbH's ("BGH") sales were based on home-market prices, while the normal values for other sales were based on constructed value ("CV")." Plt. Opp'n Cmts. on Second Remand Redetermination ("Plt. Cmts.") at 2, ECF No. 82.

Please explain the circumstances that warranted the concurrent use of home-market prices and CV to determine normal value.

II. **Commerce's determination of normal value in the presence of cost distortions**

The parties dispute the relationship between a "cost-based" particular market situation ("PMS") under 19 U.S.C. § 1677b(e) and a "sales-based" PMS under § 1677b(a).

A. Please explain your position as to the relationship between these two kinds of PMS as they pertain to the facts of this case.

B. Plaintiffs argue that the requirement under § 1677b(a) to "achieve a fair comparison" between export price or constructed export price on the one hand and normal value on the other cannot be satisfied when a respondent's reported production costs are distorted by a PMS." Plt. Cmts. at 8. Parties, please address whether, and under what circumstances, a fair comparison under § 1677b(a) can be achieved when reported costs are distorted by a PMS.

C. Plaintiffs argue further that when reported production costs are distorted, the sales-below-cost test is necessarily distorted because it compares sales prices to distorted costs. Plt. Cmts. at 16. Parties, please address whether sales that pass the sales-below-cost test notwithstanding distorted production costs may nevertheless be used to calculate normal value consistent with § 1677b(a).

2

### III. Commerce's use of PMS findings to substitute constructed value for normal value

The parties contend that the Federal Circuit's decision in *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 87 F.4th 1328, 1330 (Fed. Cir. 2023), precluded Commerce from resorting to constructed value by concluding that a PMS affecting costs renders price-to-price comparisons inappropriate, referred to by the parties as the "§ 1677b(a)(1)(C)(iii) to § 1677b(e)" approach. Plt. Cmts. at 24-25; Consol. Plt. Cmts. on Second Remand Redetermination ("Consol. Plt. Cmts.") at 3, ECF No. 85.

However, in *Hyundai Steel* the Federal Circuit stated:

"When Commerce determines normal value, it may depart from using home-market sales if it finds that a 'particular market situation in the exporting country does not permit a proper comparison with the export price or constructed export price.' 19 U.S.C. § 1677b(a)(1)(C)(iii); see also id. § 1677b(a)(1)(B)(ii)(III) (providing a similar mechanism for excluding third-country sales). Although Commerce must make a different finding from that described in section 1677b(e) to trigger those provisions, it is not the case that under the Trade Court's construction of the statute Commerce is powerless to address home market sales that are affected by a PMS yet still pass the sales-below-cost test. To the contrary, section 1677b(a)(1) specifically gives Commerce the tools to ensure 'a proper comparison with the export price.' 19 U.S.C. § 1677b(a)(1)(C)(iii)."

*Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1355 (Fed. Cir. 2021)

Please clarify how you understand *Saha Thai*'s holding to foreclose Commerce from proceeding under this statutory path.

### IV. Commerce's interpretation of 19 U.S.C. § 1677b(f)(1)(A)

The parties dispute whether Commerce could rely on § 1677b(f)(1)(A) to address distortion in a respondent's reported costs.

Please address:

A. Whether the phrase "reasonably reflect the costs associated with the production and sale of the merchandise" in § 1677b(f)(1)(A) is ambiguous.

B. If ambiguous, whether § 1677b(f)(1)(A), under the "best reading" requirement articulated in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024), permits Commerce to rely on exporters' and producers'

    books and records that, Commerce concludes, include costs impacted by a PMS.

C.     The Trade Preferences Extension Act of 2015 ("TPEA") added "particular market situation" language to the constructed value provision of the statute, § 1677b(e). If § 1677b(f)(1)(A) is interpreted to permit Commerce to adjust a respondent's reported costs to account for alleged market distortions, would such a reading render the TPEA amendment superfluous?

D.     Plaintiffs argue that prices distorted by a PMS cannot both be "outside the ordinary course of trade" under § 1677b(b) and still "reasonably reflect" the costs of producing the subject merchandise under § 1677b(f)(1)(A). Plt. Cmts. at 21. Parties, please explain the relationship between the statutory phrases "outside the ordinary course of trade" under § 1677b(b) yet still capable of "reasonably reflect[ing]" under § 1677b(f)(1)(A), and whether the provisions can be reconciled in the PMS context.

## V.     <u>Commerce's interpretation of particularity</u>

The parties dispute the meaning of the "particularity" requirement as articulated by the Federal Circuit in *Nexteel Co. v. United States*, 28 F.4th 1226, 1234 (Fed. Cir. 2022) ("the circumstances supporting a 'particular' market situation also must be 'particular' to producers of the subject merchandise during the relevant period").

A.     Particularity requirement with regard to electricity:

    1.     The parties disagree as to the relationship between the "particularity" requirement for an antidumping PMS and the "specificity" requirement in a countervailing duty ("CVD") investigation. Please address whether reliance on a CVD subsidy specificity finding is sufficient to establish PMS particularity.

    2.     Consolidated Plaintiff argues that "none of the electricity taxes or surcharges treated by Commerce as a PMS are [sic] particular to producers of fluid end blocks or even steel products in general." Consol. Plt. Post-OA Br. at 7, ECF No. 106. Please address whether Commerce must find particularity with respect to each cited benefit or regulation individually, or whether particularity may be established based on the aggregate of the benefits and regulations identified.

      3.     Defendant, please identify where, if anywhere, Commerce conducted a particularity analysis in the underlying administrative record.

  B.    Particularity requirement with regard to ferrochrome:

      1.     Consolidated Plaintiff argues that "the ferrochrome imported into Germany is not destined for consumption in Germany but for circulation within the European Union." Consol. Plt. Cmts. at 19. Defendant, please explain how the German ferrochrome market meets the particularity requirement in light of the customs union structure of the European Union.

      2.     Consolidated Plaintiff argues that invoices show that "BGH did not purchase any ferrochrome directly from Kazakhstan." Consol. Plt. Cmts. at 18. Commerce responded that "PMS findings are market-based and not respondent-specific." IDM at 24. Defendant, please explain how a market-based PMS finding satisfies the particularity requirement when the respondent did not purchase ferrochrome imported from the country identified as the source of the distortion.

      3.     Consolidated Plaintiff argues that Commerce erred in using the U.S. Geological Survey ("USGS") prices of general ferrochrome in the United States in the antidumping calculation. Consol. Plt. Cmts. at 21-22. Consolidated Plaintiff contends that the use of USGS prices is improper because the USGS "does not list any identifying information about the product or sales covered," which led to a comparison of specific grades to a general average of non-descript grades. *Id*. Defendant, please identify the explanation in the record as to the suitability of the USGS price data for this comparison.

## VI. Commerce's double-remedy analysis

Consolidated Plaintiff argues that Commerce's PMS adjustment may be contrary to law because the adjustment may duplicate remedies imposed through the companion countervailing duty investigation. Consol. Plt. Cmts. at 13. Commerce concluded that a double remedy in this context is not precluded as a matter of law. IDM at 21.

This Court previously held that, in choosing a calculation methodology under § 1677b(e), Commerce is required to act reasonably. *Vicentin S.A.I.C. v. United States*, 43 CIT __, __, 404 F. Supp. 3d 1323, 1342 (2019). This Court held

5

further that although double counting is not precluded under § 1677b(e), Commerce is required to explain the reasons that the CVD investigation and resulting duties have not remedied the distortion caused by the PMS.  *Id*.

Defendant, please explain how the Second Remand Results meet this requirement.

The court prefers to discuss any confidential information all at once, following the public session, at which time those without authorized access to confidential information will be asked to leave the Courtroom or be dropped from the videoconference.

Parties may raise other issues that they consider to be of highest importance. Thank you for your assistance and cooperation.

Sincerely,

/s/ Timothy M. Reif

_____

Timothy M. Reif, Judge